

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

GROVER SELLERS
WILLIAMSON
ATTORNEY GENERAL

Honorable George W. Cox
State Health Officer
Board of Health
Austin, Texas

Dear Sir:

Opinion No. O-7083
Re: Registration of veterinary pro-
ducts under the Texas Livestock
Remedy Act.

Your request for opinion on the above matter reads
in part as follows:

"We would like to submit our request to you
for a formal ruling onthe following question:

The Miller Veterinary Supply Company, Fort
Worth, Texas, who is the distributor for
several manufacturers engaged in the manu-
facture and sale of veterinary products, has
applied for a blanket registration under
Senate Bill No. 75, known as the Texas Live-
stock Remedy Act. Can a distributor distri-
buting veterinary products under the manufac-
turer's label make such a blanket registra-
tion or is it the responsibility of the indi-
vidual manufacturers to register their pro-
ducts direct according to the requirements of
the Texas Livestock Remedy Act?"

Section 4 of Senate Bill No. 75 (Article 192-1, Ver-
non) reads as follows:

"(a) Any person may make application for the
registration of a livestock remedy by filing with the
State Health Officer on forms furnished by him, a
sworn statement with respect thereto setting forth:

"(1) The name and principal address of the
manufacturer or person responsible for placing such
livestock remedy on the market;

"(2) The name, brand or trademark under which
the livestock remedy is to be sold;

"(3)   The minimum net contents of the package, lot or parcel of such livestock remedy (stated by weight in the case of solids and by volume in the case of liquids, and by both count and weight or volume per dose in the case of dosage forms);

"(4)   The English name  of each active ingredient, except in the case of livestock remedies for insecticidal use, the name and percentage of each active ingredient together with the total percentage of inert ingredients or the name and percentage of each inert ingredient or the words "active ingredients 100%" when the article consists of ingredients all of which will prevent, destroy, repel or mitigate insects or parasites;

"(5)   The percentage of diluent filler or inert ingredient;

"(6)   If present, the name and quantity or proportion of all anthelmintic drugs, alcohol, strychnine, arsenic, lead, mercury, chloroform, or any derivative or preparation of such substances;

"(7)   If present, the minimum percentages of phosphorus (P) and iodine (i) and the maximum percentages of calcium (Ca) and salt (NaCl);

"(8)   If present, the quantity of vitamin A in U.S.P. units, vitamin D for poultry in A.O.A.C. chick units, vitamin D. for other animals in U.S.P. units, and all other vitamins in milligrams or micrograms per gram, ounce or pound, in the case of solids and per milliliter, fluid ounce, or pint in the case of liquids, or per count in the case of dosage forms;

"(b)   A label or specimen of labeling for any livestock remedy shall accompany each application for registration, and when requested by the State Health Officer a representative and true sample or specimen of each livestock remedy to be registered.

"(c)   If the State Health Officer after examination and investigation finds the application and labeling comply with the requirements of this Act, a certificate of registration shall be issued the applicant on payment of a registration fee as hereinafter provided.  All such certificates shall be issued for a period not exceeding one year, expiring on December 31st of each year.  No certificate shall be construed

as a recommendation or endorsement of the livestock remedy registered.

"(d)  The provisions of this section shall not apply to a livestock remedy intended solely for investigational, experimental or laboratory use by qualified persons, provided the article is plainly labeled 'For Investigational Use Only'.

"(e)  Nothing in this Act shall apply to any product registered with the Commissioner of Agriculture under the provisions of Chapter 98, Acts of the Regular Session of the 48th  Legislature."

Section 5 of said Act reads as follows:

"To provide for the costs of enforcement of this Act:  (a)  The State Health Officer shall, prior to the issuance of an original certificate of registration for any livestock remedy,  collect from the applicant therefor a registration fee of not more than Ten Dollars ($10.00) for each separate and distinct article registered; or a blanket fee of not more than One Hundred Dollars ($100.00) of any manufacturer or person registering ten or more products:  Provided, that for a period of six months or less the original registration fees above mentioned shall be halved; and, provided further, that when a livestock remedy has been registered and the registration fee paid by the manufacturer or distributor, no other person shall be required to pay such fee.

"(b)  Registration of any livestock remedy may be continued in force and effect upon the payment of an annual renewal fee of not more than Ten Dollars ($10.00) for each separate and distinct product registered; or a blanket renewal fee of not more than One Hundred Dollars ($100.00) of any manufacturer or person registering ten or more products.  Provided, that such re-registration must be applied for and all renewal fees paid on or before January 31st of each year.

"(c)  In the event the registration fees above set forth provide more revenue than necessary for the enforcement of this Act, the State Health Officer is hereby authorized and directed to reduce such fees by regulation, or by regulation to increase such fees if deemed necessary, but not in excess of the fees specified in sub-sections (a) and (b) hereof.

"(d)  Any retailer of livestock remedies who has bought a supply of such remedies at a time when such articles were duly registered shall be allowed to sell or otherwise dispose of the same without re-registering such articles."

Section 15 of said Act, being the emergency clause, reads in part as follows:

"The fact that there is now no adequate law regulating the manufacture and sale of livestock remedies in Texas, and the further fact that the livestock producers of Texas need uniform guarantee and assurance that the products which are offered to them for sale and which they purchase to administer to their livestock meet the respective purposes for which each is supposed to be used, . . . creates an emergency. . ."

We are unable to find anything in the Act which would require the individual manufacturer to register its own products.  Section 4 authorizes "any person" to make application for the registration of a remedy, not "any manufacturer".  However, it is clear that the information required by said Section 4 to be sworn to can be given only by one who has personal knowledge of the ingredients of the particular remedy.  Hearsay statements of such contents, such as could be gained from a reading of the label of the package, are of no probative value and will not suffice.  Such heresay statements would be no assurance to the livestock producer who might purchase the remedy that the product is what it is represented to be.

Yours very truly

ATTORNEY GENERAL OF TEXAS


By s/Arthur L. Moller
   Arthur L. Moller
   Assistant

ALM:ms:wc

APPROVED FEB 23, 1946
s/Carlos C. Ashley
FIRST ASSISTANT
ATTORNEY GENERAL

This Opinion Considered And Approved In Limited Conference